UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--o0o--

| | |
|---|---|
| ESTATE OF MYRA L. MICALIZIO, et. al., | ) Case No. 2:18-cv-02005-MCE-DMC<br>)<br>) |
|             Plaintiffs, | ) Redding, California<br>) Wednesday, January 9, 2019 |
|   vs. | ) 10:13 A.M.<br>) |
| COUNTY OF BUTTE, et al., | ) Hearing re:  motions.<br>) |
|             Defendants. | )<br>) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:                    MARK E. MERIN
                                   PAUL H. MASUHARA, III
                                   Law Office of Mark E. Merin
                                   1010 "F" Street, Suite 300
                                   Sacramento, CA   95814
                                   (916) 44-6911

For Defendants:                    WILL CAMY
                                   Porter Scott
                                   350 University Avenue, Suite 200
                                   Sacramento, CA   95825
                                   (916) 929-1481

Court Recorder:                    (UNMONITORED)
                                   U.S. District Court
                                   501 I Street, Suite 4-200
                                   Sacramento, CA   95814
                                   (916) 930-4193

Transcription Service:             Petrilla Reporting &
                                       Transcription
                                   5002 - 61st Street
                                   Sacramento, CA   95820
                                   (916) 455-3887

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    REDDING, CALIFORNIA, WEDNESDAY, JANUARY 9, 2019, 10:13 A.M.

2

3        (Call to order of the Court.)

4            THE COURT:  Good morning, counsel.  State your

5    appearance, on the phone first please.

6            MR. MERIN:  Good morning, Your Honor.  This is Mark

7    Merin together with Paul Masuhara for plaintiffs.

8            THE COURT:  Very good, Mr. Merin and Mr. Masuhara.

9    Welcome.

10           And here in court?

11           MR. CAMY:  This is Will Camy from Porter Scott for

12    defendants.

13           THE COURT:  And I realize, Mr. Camy, that we've got

14    folks on the phone, but I am going to ask you to stand when

15    addressing the Court.

16           MR. CAMY:  Yes, Your Honor.

17           THE COURT:  All right.  Thank you.

18           All right.  As to the motion to compel, I'll hear

19    first from moving parties.

20           MR. MERIN:  Well thank you, Your Honor.  This has

21    been a very frustrating situation for us.  Back in October, on

22    October the 4th we initially filed our request for production

23    of documents, and since then, I must say, it's been a real

24    struggle to try to get the information which we're entitled to.

25           The defendants have refused to produce the documents

1  which are clearly relevant and discoverable, and specifically

2  at this point are two I.A. investigations relating to excessive

3  force and a third I.A. investigation that they characterize as

4  related to social media.

5  　　　　THE COURT:  Now Mr. Merin, my understanding -- excuse

6  me, counsel.  My understanding is that some 529 pages have been

7  produced and that we're still addressing only a single I.A.

8  investigation.  Am I incorrect in that?

9  　　　　MR. MERIN:  No.  In fact there are three I.A.

10  investigations that are in issue, Your Honor.

11  　　　　THE COURT:  All right.  I was under the impression

12  from the papers filed that two of those had in fact been

13  produced.

14  　　　　MR. MERIN:  No, that's incorrect, Your Honor.

15  　　　　THE COURT:  All right.  Very good.

16  　　　　MR. MERIN:  Defendants are taking this position that

17  they're not going to produce anything unless there's a

18  protective order that's issued and of course in that regard

19  they're not complying with the appropriate rules and the

20  procedures because if they were, an insistence or a belief that

21  a protective order was warranted, then it was their obligation

22  to initiate the filing of a protective order and to set out in

23  such an order or a memorandum in support of such an order the

24  basis for their arguments.

25  　　　　　　But to withhold documents unilaterally until the

1  moving party consents to the issuance of a protective order

2  without even setting out the nature of the basis for the

3  reasons supporting or giving us an opportunity to oppose the

4  protective order is entirely in derogation of their roles. So

5  it's that that's led us to this unfortunate situation where

6  we're asking Your Honor to intervene to compel the production

7  of these documents.

8  THE COURT:  And with regard to the protective order,

9  the county drafted a stipulated protective order, is that

10  correct?

11  MR. MERIN:  Well the county drafted a stipulated

12  protective order relating to other documents and we reviewed

13  and agreed to the execution or the entry of such an order

14  because we agree that certain things are confidential, such as

15  social security numbers; addresses; telephone numbers of

16  witnesses, such things which are commonly protected and we've

17  returned that protective order and they've never even filed it.

18  But that protective order would not pertain to these

19  three I.A. investigations that we are seeking.

20  THE COURT:  All right.  Anything else, counsel?

21  MR. MERIN:  Well I think we set out in rather

22  extensive detail both our positions and our legal authority,

23  and I think that it is unfortunate that for some reason in this

24  day and age certain firms take the position that they are just

25  not going to either comply with the discovery rules and in an

orderly fashion produce the documents or else file their
motions so that their positions can be evaluated by the Court
and we can move on.  But this foot dragging and unilateral
resistance to legitimate discovery is frustrating and it should
be curtailed.  That's our position, Your Honor.

THE COURT:  All right.  And I do want to compliment
the thoroughness of the joint statement.  I appreciate the
effort that went into that and advising the Court of the scope
of applicable authorities, though I would agree with you, Mr.
Merin, that it is unfortunate that for all of that effort this
still ended up before the Court.

But let's hear from Mr. Camy.  If you would provide
the Court with the defense position on these matters, and feel
free to come to the podium if it's easier, but I don't want you
to have to drag all your stuff.

MR. CAMY:  Thank you, Your Honor.  And the
characterization that plaintiff's counsel gave is completely
inaccurate.  They served their responses on October 4th.  We
have 30 days after to provide responses.  I think they were
initially due on November 7th.  We asked for a two-week
extension and were intending to provide responses two weeks
thereafter, but as you recall on November 8th was the Camp Fire
in Paradise and I couldn't even get ahold of anybody from the
county or sheriff's office even if I wanted to for weeks.  And
so it was very challenging to round up documents and to get

1    responses for this.

2            Finally we were able to provide responses in early

3    December and they were very cordial and extended the

4    professional courtesies to allow us to have extensions in light

5    of this horrible circumstance that was going on and we

6    appreciated that.  But we provided responses in early December.

7            Like Your Honor noticed earlier, we provided 529

8    pages of documents which included documents from the deputy's

9    personnel file.  It included psychiatric evaluation results;

10   things that a lot of defense firms would not have produced

11   without a protective order and I was trying to be abundantly

12   reasonable.

13           I talked to the deputies and I said some people would

14   say that you have a privacy right in this, but if we can avoid

15   a discovery dispute and you are okay with it I'd like to

16   produce it, and they said go ahead.  So we produced a lot of

17   documents.

18           What we didn't produce were these three Internal

19   Affairs investigations.  Two of them related to excessive --

20   alleged excessive use of force --

21           THE COURT:  And am I correct in the understanding,

22   counsel, that you agree that those should be produced?

23           MR. CAMY:  We agree that we will produce them

24   pursuant to a protective order and we sent the draft stipulated

25   protective order to plaintiff's counsel.  It's Exhibit 5 to my

1   declaration, and if you look on page two there's a list of
2   documents that would be pursuant to that stipulated protective
3   order and you'll see that two of the -- items No. 3 and items
4   No. 4 on the draft stipulated protective order are those two
5   I.A.s related to excessive use of force.

6           And so we did agree that if they would agree to this
7   protective order we would produce the two I.A.s related to
8   excessive use of force.  That would keep those items
9   confidential.

10          Pursuant to those terms of the protective order they
11  could say, after reviewing the documents, we don't agree that
12  those documents are confidential, we think they should be -- we
13  should be able to produce them to the public and shift the
14  burden back to us to file a motion for a protective order so
15  then we could be having this discovery dispute.  But they've
16  taken issue with that and said we won't sign that, we won't
17  agree to that and we need to get the Court involved now.

18          I think it's premature.  We would've given those
19  documents to them pursuant to this protective order.  It
20  doesn't mean that that's forever sealed and they can never
21  disclose them.  It just means that we can further meet and
22  confer if needed, after they've had a chance to review the
23  investigations and feel there's a need or feel that the public
24  has a right to know what's in the documents, then we can meet
25  and confer further and we can decide whether to put this

1 | dispute before the Court.

2 | With respect to the third I.A. which is the --
3 | related to social media posts that were allegedly
4 | inappropriate, I just don't think it has any relevance to this
5 | case, and when you weigh the privacy interests of the deputy
6 | versus the need for discovery it strongly weighs in favor of
7 | not production.  So I don't think they're entitled to that
8 | without a protective order or with a protective order.

9 | THE COURT:  Well counsel, the Court's at a
10 | considerable disadvantage in terms of assessing that.  Do you
11 | have that with you today, what would constitute this social
12 | media element?

13 | MR. CAMY:  I brought Exhibits 10, 11 and 12 to my
14 | declaration are all three of the I.A.s that I'll give you.  I
15 | think Exhibit -- I'd have to go back and look to be sure, but I
16 | think Exhibit 11 is the one related to social media and I think
17 | they're just chronological.  Exhibit 10 is the first I.A., 11
18 | the second one, Exhibit 12 is the third one in time.  So I
19 | think Exhibit 11 that you have in front of you is the social
20 | media one and those copies are for you, Your Honor.  You can
21 | hang onto those.

22 | THE COURT:  All right, counsel.

23 | MR. CAMY:  And I will note there -- in getting ready
24 | for this hearing there was a one-page off on the privilege log,
25 | so if you -- there's a page at the start of those exhibits

that's actually pertaining to another document. So it might be
-- you might look at the first page of those and wonder what it
is.

THE COURT: Oh, I see your note on the clerical
error. No problem.

MR. CAMY: Right. And so if that's confusing for
you, that's what that's about.

THE COURT: All right. So your argument relative to
this Exhibit 11, the social media investigation report, is
simply based on relevance to the claims at issue here?

MR. CAMY: Sort of, Your Honor. It's not just
relevance because the privacy balancing task involves assessing
the party's need for discovery which is essentially how
relevant is it, how probative is it.

And so it's really evaluating the deputy's privacy
interests and part of that balancing test is how relevant is
it. So in that sense, yes, it is -- relevance is involved, but
it's really a right to privacy type argument.

THE COURT: Why wasn't this relevance objection
raised in your initial responses?

MR. CAMY: Well it was raised in the sense that we
raised the right to privacy objection.

THE COURT: But specifically as to this document and
the contention that it was not relevant, this was not addressed
other than in the larger policy argument.

1          MR. CAMY:  If I could just have one moment, Your

2     Honor?

3          (Pause.)

4          MR. CAMY:  It doesn't appear in our initial response.

5     The objections we raised were overbroad, which is the request

6     was seeking all I.A.s and we think a proper request is for

7     I.A.s related to issues in this case.  So in that sense it kind

8     of ties into relevance objection also, but no, we did not

9     specifically object on the basis of relevance.

10          THE COURT:  Now in each of these I.A. investigations,

11     including the third one -- and I'm referring to the social

12     media investigation as the third I.A. investigation at issue

13     here -- it appears that the deputy was exonerated, that there

14     was no finding of any discipline or culpability.

15          MR. CAMY:  With respect to the excessive force I.A.s,

16     that's correct.  My understanding -- and I didn't review it to

17     prepare for this hearing -- for the social media posting is

18     that's not correct; that there was a -- I'm not going to say

19     discipline imposed, but counseling or something to that effect.

20          THE COURT:  All right.

21          MR. CAMY:  And I'm kind of unclear what -- I'm

22     hesitant to waive some sort of --

23          THE COURT:  Sure.  No.  Understood.  Then what the

24     Court's going to do is take a break from these proceedings and

25     I'm going to read through your Exhibit 11 and get a better

1    understanding of what we're dealing with.

2              After that in camera review, Mr. Merin, we will

3    contact you by phone again within the next 15 minutes and

4    complete this hearing.

5              MR. MERIN:  Very good.  Thank you, Your Honor.

6              THE COURT:  Thank you.

7              Mr. Camy, if you will just bear with us for a few

8    minutes --

9              MR. CAMY:  No problem.

10             THE COURT:  -- and we'll reconvene.  Since you've

11   already made the journey up here we'll get it done.

12             MR. CAMY:  All right.  Thank you, Your Honor.  I'll

13   just sit here.  Is that okay?

14             THE COURT:  That's fine.

15             MR. CAMY:  All right.

16         (Recess from 10:28 a.m. to 10:43 a.m.)

17         (Call to order of the Court.)

18             THE COURT:  And appearances again please, counsel.

19             MR. MERIN:  Mark Merin and Paul Masuhara for

20   plaintiffs, Your Honor.

21             MR. CAMY:  And Will Camy for defendants.

22             THE COURT:  All right.  Mr. Camy, we were last

23   addressing the exhibits that you provided for in camera review;

24   specifically Exhibit 11 which I understand constitutes the I.A.

25   investigation documents that we've been referring to as the

third I.A. investigation that is the one dealing with social

media issues, correct?

MR. CAMY:  Yes, Your Honor.

THE COURT:  And the Court, having now had an

opportunity to review that in camera, it is my finding that

that is indeed irrelevant to the issues in this matter and I'm

going to deny plaintiffs' motion as to that specific Internal

Affairs investigation.

As to the remaining investigations and documents

being sought, anything else for the Court at this time?

MR. CAMY:  I would just request that the Court issue

a protective order along the lines of what we've put in -- well

now that the Court has -- well I guess the Court hasn't

reviewed that, but I would ask the Court to issue a protective

order along the lines of Exhibit 5 which is the stipulated

protective order that we sent to plaintiffs' counsel where

plaintiffs' counsel can review -- we'll produce them, they can

review them and use them for the purposes of this lawsuit, but

they're not allowed to disclose it to any third party other

than those outlined in Exhibit 5.

THE COURT:  And counsel, why did you not pursue a

protective order pursuant to Rule 26(c) in advance of

production here?  I certainly see the utility of that and the

potential applicability, but I'm troubled by the timeliness

issue and feel like at this stage it's a bit late.

1    MR. CAMY:  Your Honor, thank you.  There's a couple

2    reasons for that.  First reason is I don't think legally -- I

3    don't agree with the position that you're required to file a

4    motion for a protective order at the time that you provide

5    responses.

6         On page 18 of the joint statement we discussed the

7    waiver argument.  There's a citation to -- I don't want to

8    butcher the name of it, but Laxalt v. McClatchy that says that

9    a party whose privacy is affected may either object to the

10   discovery request or seek a protective order.

11        There's also -- if you look at the cases that they

12   cite, one of them is Britain v. Stroh Brewery Company.  That's

13   also on page 18 of the joint statement where we discuss that,

14   and in that case the court cited -- the court stated the court

15   finds good cause to excuse defendant's otherwise untimely

16   request for a protective order covering written discovery

17   because defendant sought in good faith to negotiate a consent

18   protective order.

19        In such a situation a party establishes its good

20   faith by showing that it specifically noted the objection and

21   need for a protective order in its response to written

22   discovery and submitted a proposed consent protective order to

23   the opposing party.

24        And that's exactly what we did here, Your Honor, is

25   we objected to it.  We told them that we would produce the

1 documents pursuant a stipulated protective order.  We sent them

2 the stipulated protective order, but their position is that

3 they would never have agreed to a stipulated protective order

4 for any Internal Affairs investigations and that it was

5 something that we needed to put before the Court.

6 The second reason why we didn't move for protective

7 order at the time we provided responses is because I've had

8 previous cases with Mr. Merin's office and there's actually two

9 of them ongoing right now where we produce responses and then

10 thereafter produced a protective order, and met and conferred

11 with them and were able to agree to a protective order for

12 documents in those cases that was then entered and then we

13 produced documents, and I thought we were kind of following

14 that same time line here.

15 In both of those cases they never objected to the

16 fact that we didn't file a formal motion with the court prior

17 to negotiating a protective order with them, a stipulated

18 protective order and it just seemed unnecessary to involve the

19 court at that stage in our discovery.

20 I guess the third reason would be we were rushing to

21 get the documents produced on time because of the campfire

22 issue and didn't really know what we were dealing with until it

23 was already December, they'd already given us five, six weeks

24 of extensions.  By the time we get these documents, and it

25 wasn't really feasible, even if we had wanted to or tried to,

1    to then put together a motion for a protective order and start

2    working on that before we produced responses.  So I guess it's

3    threefold.

4            THE COURT:  Fair enough, and now, with the third

5    Internal Affairs investigation being set aside and the

6    acknowledgment that the two other I.A. investigations resulted

7    in exoneration, is there really a need for a protective order

8    as to the remaining two I.A.s?  What purpose does a protective

9    order serve at this stage relative to those two remaining

10   I.A.s?

11           MR. CAMY:  I understand that the deputy was

12   exonerated, but a lot of people that Deputy Lair deals with,

13   the mere fact that these things were alleged against him I

14   think is sufficient to need a protective order.  Allegations by

15   themselves carry weight with people.

16           Deputy Lair is continuously interacting with the

17   public and if the public knows that these things were alleged

18   against him and that he went through an investigation, a lot of

19   them will not appreciate the fact that he was exonerated means

20   that they shouldn't consider it.  And so I don't think it's

21   appropriate for the public to have unfettered access to this

22   information merely because he was exonerated.

23           THE COURT:  All right.  Anything else for the Court?

24           MR. CAMY:  No, Your Honor.

25           THE COURT:  All right.  I'll hear from Mr. Merin on

1  this --

2  MR. MERIN: I'm sorry. I do have a few comments,

3  Your Honor. First of all, it is the responsibility of the

4  parties resisting discovery, not those that are seeking

5  discovery to move for the protective order and we've set out

6  the citations on pages eight and nine of our brief and these

7  were specifically to Eastern District of California

8  authorities; specifically the Leonard v. Sherwin Williams case

9  and the Caldony v. Hand (phonetic) cases, and they're recent

10  authority.

11  The parties' insistence that the moving party -- I

12  mean the defendant's in this case, insistence that the moving

13  party first stipulate to a protective order is putting the cart

14  before the horse or reversing the obligations under Federal

15  Rule 26 and I think that is inappropriate.

16  THE COURT: However, counsel, there was clearly a

17  meet and confer process underway at this stage and you have

18  undoubtedly had experience in the world of 1983 cases and the

19  process of negotiating protective orders. Is there a reason

20  why a protective order shouldn't issue here relative to those

21  that are being produced given the fact that apparently there's

22  an agreement as to applicability of a protective order as to

23  other documents?

24  MR. MERIN: Well yes, Your Honor, and I think had it,

25  at an early stage, moved in that direction of the -- that would

1   be one thing, but that isn't what happened.  And here, at the

2   eleventh hour, while we're at your doorstep negotiating for the

3   entry of protective order, it just -- it means that at the end

4   of the -- at the finish line we're now doing what should've

5   happened much earlier and that's why it's very frustrating for

6   us.

7   But we agree that if we get the documents and we find

8   that they are in fact entitled to confidentiality, if we don't

9   disagree with that, then fine.  Then we have no need to publish

10  those documents.  But on the other hand, the burden would be on

11  them if we dispute the confidentiality.

12  So at this point, to get the documents we would agree

13  to the entry of a protective order that again, preserves their

14  burden to proceed to justify the issuance of a protective order

15  covering documents which we dispute as to their being

16  confidential.

17  But I just want to -- there's just one other thing

18  that really, let's say, gall's me, and that is that the

19  insistence on confidentiality when what the courts have said is

20  that we can file allegations relating to, and it's typically

21  done, the allegations of police excessive force and other

22  inappropriate conduct are often filed and the public has that

23  information and they can evaluate the information, whether it's

24  justified or not.

25  And I think that that Wiggins v. Burgie (phonetic)

case that we cite on page 11 that talks about lawsuits against
law enforcement being filed every day and they're a matter of
public record.  So the idea that you have exonerated I.A.
investigations, and of course that's not the last word, we know
that the I.A. has a particular stance.

I won't say prejudice, but they tend to exonerate
their folks and that's one of the bases for this lawsuit, that
the department itself has consistently exonerated officers who
have been accused of and actually been sued in federal courts
successfully, and that it's that tolerance of excessive force
which has skewed the relationship between law enforcement and
the public.

And had the department in this case been doing its
job and insisted on compliance with the rules that should be
governing police conduct we wouldn't be facing so many
instances of unjustified police killing a civilian, and that's
what this case involves, Your Honor.  So I don't see, even on
its face after the exoneration that these would be properly
subject to any protective order.

THE COURT:  That having been said, I'm hearing you,
that there is a willingness to make these subject to a
protective order in return for receiving the other two I.A.
investigations.

MR. MERIN:  Well that is true, Your Honor, and it's
just a matter of expediency as you can understand.  We want the

documents and we're prepared to take them understanding that if we disagree as to the confidentiality the burden will still be on the defendants to go ahead and move essentially to preserve that otherwise stipulated protective order.

THE COURT: And I think you --

MR. MERIN: We are willing to do that. But there's one comment I want to make about the document that you've examined in chambers. Of course we haven't seen it, it hasn't been described to us in any way other than that it relates to social media and you found that it's not relevant.

Well with all due respect, Your Honor, you don't necessarily know the nuances of this case and you don't necessarily pick up or you couldn't possibly pick up all the potential relevance of documents that may be disclosed either in that I.A. or are discoverable through pursuing leads in the I.A. that might lead us to things that are important to us.

I mean one of the things that is an issue in this case of course is the, if I say laxity of the department supervision or tolerance of the misbehavior on the parts of deputies that has led to a culture in this department that breeds derogation of the rights of individuals, those are the things that we might discover and that you may not, just in a review in chambers, be able to pick up.

So therefore, what I would propose is, even though in your review you don't believe they're relevant, since we also

1    believe that that objection was waived, that these documents be

2    produced pursuant to that protective order and that if it -- at

3    least it will give us an opportunity to have an independent

4    review of that I.A. and if we determine that we believe that it

5    isn't confidential and is important, that we can then raise

6    that with the Court and the Court will have the benefit of the

7    briefing on the question and see potentially why we -- or see

8    why we potentially feel it is relevant and could lead to

9    discoverable information.

10           THE COURT:  Your arguments are so noted, counsel.

11   However -- and if this was a situation where I felt it was in

12   any way potentially relevant, then we might consider that

13   potential further.  However, I am satisfied having reviewed

14   what has been offered in camera as Exhibit 11 to counsel's

15   declaration, that it is nowhere close, thus not giving rise to

16   the need for production.

17           I am however going to grant plaintiff's motion as to

18   the other two I.A. investigations.  Mr. Camy, I believe that's

19   Exhibit 10 and 12 to your declaration, is that correct?

20           MR. CAMY:  Yes, Your Honor.  May I make one brief

21   comment?

22           THE COURT:  You may.

23           MR. CAMY:  Very brief.  The -- what they're not

24   proposing is that we produce this pursuant to a protective

25   order where they get to review it and then the burden is still

1  on us to file a motion for a protective order to keep them

2  confidential is exactly what we proposed in our protective

3  order in Exhibit 5.  What the -- the Court's order essentially

4  today is exactly what we were willing to do from day one, and

5  so I guess my point is they've accomplished nothing by filing

6  this motion to compel other than wasting their time and our

7  time, and here we are getting exactly what the county's

8  position was in the first place.

9       THE COURT:  And to that end, the Court is going to

10  order that the parties enter into the protective order that the

11  county drafted.  To the extent that the parties have sought

12  sanctions on either side, those are denied.  I do believe that

13  this could have been resolved without bringing the case here.

14       Having granted the motion to compel though, in its

15  limited form, I am going to award recovery of attorney's fees

16  and costs associated with bringing the motion with the reminder

17  to counsel on both sides that diligence in the meet and confer

18  process can avoid this.

19       Mr. Merin, I see in your declaration a total claim

20  for fees and costs in the amount of $4,230, is that correct?

21       MR. MERIN:  Yes, Your Honor.

22       THE COURT:  So awarded.

23       MR. MERIN:  Thank you, Your Honor.

24       THE COURT:  And the parties will have 10 days to

25  execute the -- and -- execute the protective order and provide

1  the documents constituting the two I.A.s at issue.

2      MR. MERIN:  Thank you, Your Honor.

3      THE COURT:  Anything further, Mr. Camy?

4      MR. CAMY:  I guess I'm confused, Your Honor.  You're

5  awarding them sanctions even though the order is that Exhibit

6  11 is not produced, Exhibit 10 and 12 are produced pursuant to

7  the stipulated protective order and so the county's getting the

8  exact result that it requested in opposition to the motion and

9  what it was willing to do back on December 6 when it produced

10 responses and so I guess I'm confused why sanctions are being

11 awarded against us when the Court has basically said that our

12 position is the correct position.

13     THE COURT:  Not sanctions, counsel, but the statutory

14 award of fees as to the prevailing party in a motion to compel,

15 and while we are denying as to Exhibit 11, nonetheless, this

16 motion to compel as to the other two I.A.s is being granted and

17 for that reason an award of attorney's fees.

18     MR. CAMY:  Your Honor, their motion to compel was for

19 production of Exhibits 10 and 12 without a protective order.

20 Our opposition was we will produce Exhibit 10 and 12 with a

21 protective order.  So they -- I don't understand how they're

22 the prevailing party when they're not getting the relief

23 sought.  Their relief was 10, 11 and 12 produced without a

24 protective order.  What our relief recommended was not

25 producing 11, we'll produce 10 and 12 pursuant to the

1   protective order which is what the Court is issuing an order

2   for.  And so I just don't understand how they're the prevailing

3   party.

4           THE COURT:  Well to the extent that they brought the

5   motion and they are now receiving the -- two of three of their

6   requested I.A.s they are the prevailing party.  I am granting

7   the -- basically the request for a protective order based on

8   their willingness to have that applied in the hopes that that

9   will further resolve this issue going forward.  But starting

10  from the premise of an order was necessary and this motion was

11  brought rather than having this resolved outside of court,

12  they're going to receive their attorney's fees per statute.

13          MR. MERIN:  Thank you, Your Honor.

14          MR. CAMY:  And Your Honor, I appreciate that, but it

15  wasn't necessary for them to bring this matter to court because

16  what is the result of this is exactly what the county was

17  willing to do and had proposed doing before they even filed

18  their motion.

19          THE COURT:  And had this been reached by stipulation,

20  then that could've been avoided.  And again, my admonishment,

21  counsel, to be diligent in the meet and confer efforts, but

22  that's the Court's order.

23          MR. CAMY:  Okay.  Thank you, Your Honor.

24          MR. MERIN:  Thank you.

25      (Whereupon the hearing in the above-entitled matter was

1   adjourned at 11:04 a.m.)

2                       --o0o--

3                  CERTIFICATE

4     I certify that the foregoing is a correct transcript from

5   the electronic sound recording of the proceedings in the above-

6   entitled matter.

7

8   /s/ Patricia A. Petrilla           January 22, 2019

9   Patricia A. Petrilla, Transcriber

10   AAERT CERT*D-113